**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PREMLATA VAZIRANI,<br><br>      Plaintiff,<br><br>   v.<br><br>SLACK TECHNOLOGIES, INC., ANDREW BRACCIA, STEWART BUTTERFIELD, EDITH COOPER, SARAH FRIAR, SHEILA JORDAN, MIKE MCNAMARA, JOHN O'FARRELL, and GRAHAM SMITH,<br><br>      Defendants. | Case No.:<br><br>JURY TRIAL DEMANDED<br><br>**COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS** |

Plaintiff, by her undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to herself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**BACKGROUND**

1.      This action concerns a proposed transaction ("Proposed Transaction") announced on December 1, 2020, pursuant to which Slack Technologies, Inc. ("Slack" or the "Company") will merge with Salesforce.com, Inc. ("Salesforce").

2.      On December 1, 2020, Slack's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger and reorganization (the "Merger Agreement"). Pursuant to the terms of the Merger Agreement, each share of Slack's common stock will be converted into approximately 0.0776 shares of Salesforce common stock and the right to receive $26.79 in cash (the "Merger Consideration").

3.      On December 23, 2020, in order to convince Slack's shareholders to vote in favor of the Proposed Transaction, Defendants filed a materially incomplete and misleading

preliminary S-4 Registration Statement (the "Registration Statement") with the United States Securities and Exchange Commission ("SEC").

4.      The Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading. Accordingly, Plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Registration Statement.

5.      In addition, a special meeting of Slack stockholders will be held to vote on the Proposed Transaction (the "Stockholder Vote").  It is therefore imperative that the material information that has been omitted from the Registration Statement is disclosed prior to the Stockholder Vote so Slack stockholders can properly exercise their corporate voting rights and make an informed decision on whether to vote in favor of the merger.

## JURISDICTION & VENUE

6.      This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act and 28 U.S.C. §1331 because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

7.      This Court has jurisdiction over Defendants because each defendant is either a corporation that conducts business in this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because, among other things: (a) the conduct at issue will have an effect in this District; (b) a substantial portion of the transactions and wrongs complained of herein, occurred in this District; and (c) certain Defendants have received

substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.  Additionally, the Company's common stock trades on the NASDAQ, which is headquartered in this District.

## THE PARTIES

9.      Plaintiff is, and has been continuously throughout all times relevant hereto, a Slack shareholder.

10.     Defendant Slack is a Delaware corporation and a party to the Merger Agreement. Slack shares are traded on the NASDAQ under the ticker symbol "WORK."

11.     Defendant Andrew Braccia is a director of the Company

12.     Defendant  Stewart Butterfield is Chairman of the Board of the Company.

13.     Defendant Edith Cooper is a director of the Company.

14.     Defendant Sarah Friar is a director of the Company.

15.     Defendant Sheila Jordan is a director of the Company.

16.     Defendant Mike McNamara is a director of the Company.

17.     Defendant John O' Farrell is a director of the Company.

18.     Defendant Graham Smith is a director of the Company.

## FACTS

19.     Slack operates an occupational technology software platform that joins people, applications, and data and markets its offering under a software-as-a-service model. The software platform offers a team communication tool that consists of a set of open documented application programming interface (APIs), developer tools, and an App Directory that lists apps that have met the guidelines.

20.     Salesforce is a provider of business software, distributed through the cloud, with a concentration on customer relationship management (CRM). Salesforce focuses on cloud, mobile, social, Internet of Things (IoT) and artificial intelligence technologies. Salesforce's service offerings are constructed and integrated with supplementary platforms and enterprise applications. Salesforce supplies  its service offerings via Internet browsers and on mobile devices.

21.     On December 1, 2020, Slack's Board caused the Company to enter into the Merger Agreement.

22.     At the Effective Time (as defined in the Merger Agreement), and as a result of the Merger:

> each share of Company Common Stock issued and outstanding immediately prior to the First Effective Time (other than any Dissenting Shares, Cancelled Shares or shares covered by Company Restricted Share Awards) shall be converted into (A) 0.0776 (the "Exchange Ratio") fully paid and nonassessable shares of Parent Common Stock, subject to Section 2.5 with respect to fractional shares (the "Stock Consideration"), and (B) the right to receive $26.79 in cash, without interest (the "Cash Consideration" and, together with the Stock Consideration, the "Merger Consideration").

23.     The Merger Consideration is unfair because, among other things, the intrinsic value of the Company is in excess of the amount the Company's stockholders will receive in connection with the Proposed Transaction.

24.     It is therefore imperative that the Company shareholders receive the material information that Defendants have omitted from the Registration Statement so that they can meaningfully assess whether the Proposed Transaction is in their best interests prior to the vote.

25.     Section 5.3 of the Merger Agreement has a "no solicitation" clause that prevents Slack from soliciting alternative proposals and constraints its ability to negotiate with potential buyers:

Section 5.3    No Solicitation by the Company.

(a) From and after the date hereof until the earlier of the First Effective Time or the date, if any, on which this Agreement is validly terminated pursuant to Section 8.1, the Company agrees that it shall not, and shall cause the Company Subsidiaries, and its and their respective officers and directors not to, and shall use its reasonable best efforts to cause its and the Company Subsidiaries' other Representatives to not, directly or indirectly: (i) solicit, initiate or knowingly encourage or facilitate (including by way of providing information or taking any other action) any inquiry, proposal or offer, or the making, submission or announcement of any inquiry, proposal or offer which constitutes or would reasonably be expected to lead to an Acquisition Proposal; (ii) participate in any negotiations regarding, or furnish to any person any information relating to the Company or any Company Subsidiary in connection with an actual or potential Acquisition Proposal; (iii) adopt, approve, endorse or recommend, or propose to adopt, approve, endorse or recommend, any Acquisition Proposal; (iv) withdraw, change, amend, modify or qualify, or otherwise propose to withdraw, change, amend, modify or qualify, in a manner adverse to Parent, the Company Board Recommendation, or resolve or agree to take any such action; (v) if an Acquisition Proposal has been publicly disclosed, fail to publicly recommend against any such Acquisition Proposal within ten (10)-Business Days after the public disclosure of such Acquisition Proposal (or subsequently withdraw, change, amend, modify or qualify, in a manner adverse to Parent, such rejection of such Acquisition Proposal) and reaffirm the Company Board Recommendation within such ten (10) Business Day period (or, if earlier, by the second (2nd) Business Day prior to the Company Stockholders Meeting); (vi) fail to include the Company Board Recommendation in the Proxy Statement/Prospectus; (vii) approve or authorize, or cause or permit the Company or any Company Subsidiary to enter into, any merger agreement, acquisition agreement, reorganization agreement, letter of intent, memorandum of understanding, agreement in principle, option agreement, joint venture agreement, partnership agreement or similar agreement or document with respect to, or any other agreement or commitment providing for, any Acquisition Proposal (other than an Acceptable Confidentiality Agreement entered into in accordance with this Section 5.3) (a "Company Acquisition Agreement"); (viii) call or convene a meeting of the Company Stockholders to consider a proposal that would reasonably be expected to materially impair, prevent or delay the consummation of the Transactions or (ix) resolve or agree to do any of the foregoing (any act described in clauses (iii), (iv), (v), (vi), (vii), (viii) and/or (ix) (to the extent related to the foregoing clauses (iii), (iv), (v), (vi), (vii) or (viii)), a "Change of Recommendation"). The Company shall, and shall cause the Company Subsidiaries and its and their respective officer and directors to, and shall use its reasonable best efforts to cause its and the Company Subsidiaries' other Representatives to, immediately cease any and all solicitation, encouragement, discussions or negotiations with any persons (or provision of any information to any persons) with respect to any inquiry, proposal or offer that constitutes, or would reasonably be expected to lead to, an Acquisition Proposal. Promptly after the date hereof (and in any event within two (2) Business Days following the date hereof), the Company

shall (A) request in writing that each person that has heretofore executed a confidentiality agreement in connection with its consideration of an Acquisition Proposal or potential Acquisition Proposal promptly destroy or return to the Company all nonpublic information heretofore furnished by the Company or any of its Representatives to such person or any of its Representatives in accordance with the terms of such confidentiality agreement and (B) terminate access to any physical or electronic data rooms relating to a possible Acquisition Proposal by such person and its Representatives. The Company shall enforce, and not waive, terminate or modify without Parent's prior written consent, any confidentiality, standstill or similar provision in any confidentiality, standstill or other agreement; *provided* that, if the Company Board of Directors determines in good faith after consultation with the Company's outside legal counsel that the failure to waive a particular standstill provision would be reasonably likely to violate the directors' fiduciary duties under applicable Law, the Company may, with prior written notice to Parent, waive such standstill solely to the extent necessary to permit the applicable person (if it has not been solicited in violation of this Section 5.3) to make, on a confidential basis to the Company Board of Directors, an Acquisition Proposal, conditioned upon such person agreeing to disclosure of such Acquisition Proposal to Parent, in each case as contemplated by this Section 5.3. For purposes of this Section 5.3, the term "person" means any Person or "group," as defined in Section 13(d) of the Exchange Act, other than, with respect to the Company, Parent or any Parent Subsidiary or any of their Representatives. Notwithstanding the limitations set forth in Section 5.3(a), if the Company receives, prior to the Company Stockholder Approval being obtained, a bona fide written Acquisition Proposal that did not result from a breach of this Section 5.3, the Company and the Company Subsidiaries and the Company's Representatives may contact the Person or any of its Representatives who has made such Acquisition Proposal solely to clarify (and not to negotiate or engage in any discussions regarding or relating to) the material terms and conditions of such Acquisition Proposal so that the Company may inform itself about such Acquisition Proposal. For the avoidance of doubt, any violation of the restrictions set forth in this Section 5.3 by (x) a Company Subsidiary, (y) a director or officer of the Company or any Company Subsidiary or (z) any other Representatives acting on behalf of the Company or any Company Subsidiary shall be a breach of this Section 5.3 by the Company.

26.     In addition, Section 8.2 of the Merger Agreement requires Slack to pay up to a $900,000,000 "termination fee" in the event this agreement is terminated by Slack's and improperly constrains the Company from obtaining a superior offer.  Such a termination fee is excessive and unduly restrictive to Slack's ability to consider other offers.

27.     Defendants filed the Registration Statement with the SEC in connection with the Proposed Transaction.

6

28.     As alleged herein, the Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading.

29.     First, the Registration Statement omits material information regarding Slack's and Salesforce's financial projections.

30.     With respect to Slack's Initial Three-Year Plan financial projections, the Registration Statement fails to disclose all line items used to calculate Non-GAAP Gross Profit and Non-GAAP Operating Income (Loss). The Registration Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics.

31.     With respect to Slack's Updated Three-Year Plan and Related Extrapolations financial projections, the Registration Statement fails to disclose all line items used to calculate Non-GAAP Gross Profit, Non-GAAP Operating Income (Loss), Unlevered Free Cash Flow, and Unlevered Free Cash Flow Less Stock-Based Compensation. The Registration Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics.

32.     The Registration Statement omits entirely Salesforce's financial projections.

33.     The disclosure of projected financial information is material information necessary for stockholders to gain an understanding of the basis for any projections as to the future financial performance of the combined company. In addition, this information is material and necessary for stockholders to understand the financial analyses performed by the companies' financial advisors rendered in support of any fairness opinion.

34.     Second, the Registration Statement omits material information regarding the analyses performed by the Company's financial advisors Qatalyst Partners LP ("Qatalyst") and Goldman Sachs & Co. LLC ("Goldman").

35.     With respect to Qatalyst's *Illustrative Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) all items used to calculate unlevered free cash flows; (ii) the individual inputs and assumptions underlying the discount rates of 8.25% to 9.75%; (iii) the terminal values for Slack; (iv) Qatalyst's basis for applying by a range of fully diluted enterprise value to next-12-month's estimated UFCF multiples of 30.0x to 45.0x; (v) the cash and cash equivalents of Slack as of October 31, 2020; (vi) the number of fully diluted shares of Slack common stock outstanding; and (vii) the face value of Slack's outstanding convertible debt as of October 31, 2020.  This information must be disclosed to make the Registration Statement not materially misleading to Slack stockholders and provide stockholders with full and relevant information in considering how to vote.

36.     With respect to Goldman's *Implied Premia and Multiples Analysis*, the Registration Statement fails to disclose: (i) the number of fully diluted shares of Slack common stock outstanding; and (ii) the Slack's net debt.  This information must be disclosed to make the Registration Statement not materially misleading to Slack stockholders and provide stockholders with full and relevant information in considering how to vote.

37.     With respect to Goldman's *Illustrative Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) all line items used to calculate unlevered free cash flow less stock-based compensation; (ii) the individual inputs and assumptions underlying the discount rates of 6.5% to 9.5%; (iii) the terminal values for Slack; (iv) Goldman's basis for applying an illustrative range of terminal year multiples of 25.0x to 35.0x and perpetuity growth rates ranging from 2.3% to 6.3%; (v) the number of fully diluted outstanding shares of Slack common stock; and (vi) the net debt and net operating losses used in the analysis.  This information must be disclosed to make the Registration Statement not materially misleading to Slack stockholders and

8

provide stockholders with full and relevant information in considering how to vote.

38.     With respect to Goldman's *Illustrative Present Value of Future Share Price Analysis*, the Registration Statement fails to disclose: (i) Goldman's basis for applying enterprise value to NTM revenue multiples of 16.0x to 20.0x and  (ii) the individual inputs and assumptions underlying the discount rate of 8.0%. This information must be disclosed to make the Registration Statement not materially misleading to Slack stockholders and provide stockholders with full and relevant information in considering how to vote.

39.     With respect to Goldman's *Premia Analysis*, the Registration Statement fails to disclose the premiums paid in the transactions observed in the analysis. This information must be disclosed to make the Registration Statement not materially misleading to Slack stockholders and provide stockholders with full and relevant information in considering how to vote.

40.     With respect to Goldman's *Selected Companies Analysis*, the Registration Statement fails to disclose the individual multiples and metrics for the companies observed in the analysis. This information must be disclosed to make the Registration Statement not materially misleading to Slack stockholders and provide stockholders with full and relevant information in considering how to vote.

41.     The omission of the above-referenced material information renders the Registration Statement false and misleading.

42.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## CLAIMS FOR RELIEF

### COUNT I

### (AGAINST ALL DEFENDANTS FOR VIOLATIONS OF SECTION 14(a) OF THE EXCHANGE ACT AND RULE 14a-9 PROMULGATED THEREUNDER)

43.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

44.    Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, requires that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

45.    Defendants issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

46.    In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  By virtue of their roles as officers and/or directors, each of the Individual Defendants were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose

such information to stockholders as required.

47.     The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in preparing and reviewing the Registration Statement.  Defendants were also negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully.

48.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law.

**COUNT II**

**(AGAINST THE INDIVIDUAL DEFENDANTS FOR VIOLATIONS OF SECTION 20(a) OF THE EXCHANGE ACT)**

49.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

50.     The Individual Defendants acted as controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of the Company, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially

11

incomplete and misleading.

51.    Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

52.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Registration Statement.

53.    In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

54.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

55.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these

defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

56.     Plaintiff has no adequate remedy at law.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.      Directing the Individual Defendants to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.      Granting such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: January 5, 2021

                                **MOORE KUEHN, PLLC**

                                */s/Justin Kuehn*
                                Justin A. Kuehn
                                Fletcher W. Moore
                                30 Wall Street, 8th floor

New York, New York 10005
Tel: (212) 709-8245
jkuehn@moorekuehn.com
fmoore@moorekuehn.com
*Attorneys for Plaintiff*